# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| VERTICAL WEB MEDIA, L.L.C., a/k/a<br>INTERNET RETAILER, | )<br>)<br>) | |
| Plaintiff, | )<br>) | Case No. 14 C 3220 |
| v. | )<br>) | Judge Joan B. Gottschall |
| ETAILINSIGHTS, INC., | )<br>) | |
| Defendant. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Internet Retailer sued one of its competitors, Etailinsights, Inc., alleging false advertising under the Lanham Act, 15 U.S.C. § 1125(a), and similar claims under state law. Etailinsights moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively, for a more definite statement pursuant to Rule 12(e). For the reasons explained below, the motion is granted in part and denied in part.

## I. FACTS

Internet Retailer sells a product called the "Top 500 Guide," which ranks the largest online retailers in North America. The guide is available in print and digital formats and contains information regarding online retailers' sales, web traffic, and social-networking affiliations. In connection with the Guide, Internet Retailer compiles a contact list of key executives of major online retailers. The contact list includes, among other things, the executives' titles, e-mail addresses, and phone numbers. Internet Retailer does not sell this information to third parties.

Internet Retailer uses a company called Bronto Software to send marketing e-mails to its contacts, including the online retail executives on its contact list. In 2011, a group of Bronto

employees left the company to start a new company, Etailinsights. Etailinsights competes with Internet Retailer. It also sells a guide, the "eCommerce Prospect Database Solution," which includes information about online retailers similar to the information contained in Internet Retailer's "Top 500 Guide."

The complaint alleges that Etailinsights misused Internet Retailer's proprietary information in two ways. First, it alleges that a member of Etailinsights's management team purchased Internet Retailer's products using a fake address. It further alleges, on information and belief, that Etailinsights used the research products it purchased to create a portion of its "eCommerce Prospect Database Solution" without permission. Internet Retailer contends that this violates the terms and conditions governing the use of its data.

Second, the complaint alleges that Etailinsights's employees stole Internet Retailer's contact list while they were working at Bronto. It alleges, on information and belief, that Etailinsights sold the contact list to vendors who use the information for marketing purposes. Internet Retailer contends that this violates a confidentiality agreement between Bronto and Internet Retailer.

The complaint also alleges that Etailinsights made false and misleading representations on its website. These allegations are contained in paragraphs 21-24 of the complaint, which the court recites verbatim:

> 21. On information and belief, many of the privately held retailers listed in the Database have not disclosed their web sales numbers to Etailinsights despite its false and misleading representation that "our company records are refreshed and phone verified by our research team every 90 days to ensure that our data is accurate and timely." Etailinsights' aforementioned claim is unsubstantiated and thus literally false. A copy of Etailinsights' website is attached hereto as <u>Exhibit C</u>.
>
> 22. On information and belief, although Etailinsights claimed on February 12, 2014 that 2013 data related to web sales numbers was available to subscribers to

its monthly membership, no 2013 data was available to subscribers. Etailinsights' aforementioned claim is literally false.

23. On or around March 11, 2014, several privately held online retailers featured in the Guide informed Internet Retailer that despite the fact that Etailinsights publishes its web sales, the privately held online retailers had never heard of Etailinsights and had only disclosed their web sales data to Internet Retailer.

24. The web sales numbers Etailinsights is currently publishing in the Database could only come from Internet Retailer's Guide, as several privately held online retailers have confirmed they never disclose their web sales data to any organization other than Internet Retailer.

(Compl. ¶¶ 21-24, ECF No. 1.)

Internet Retailer claims that these allegedly false and misleading representations constitute false advertising under the Lanham Act, 15 U.S.C. § 1125(a). It alleges that Etailinsights's actions in this regard are "malicious, fraudulent, deliberate, and willful." (Compl. ¶ 46.)

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of the motion to dismiss, the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

3

A complaint alleging fraud must further satisfy Federal Rule of Civil Procedure 9(b), pursuant to which a party "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake." This is often described as requiring a plaintiff to plead "the who, what, when, where and how" of the alleged fraud. *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003). For purposes of a motion to dismiss for failure to comply with Rule 9(b), the court takes the allegations in the complaint as true and makes all reasonable inferences in the plaintiff's favor. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

Finally, under Rule 12(e), a party may move for a more definite statement when a complaint is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The rule "is designed to strike at unintelligibility rather than want of detail." *Gardunio v. Town of Cicero*, 674 F. Supp. 2d 976, 992 (N.D. Ill. 2009). "Motions under Rule 12(e) are disfavored generally, and courts should grant [them] only if the complaint is so unintelligible that the defendant cannot draft [a] responsive pleading." *Rivera v. Lake Cnty.*, 974 F.Supp. 2d 1179, 1195 (N.D. Ill. 2013).

### III. ANALYSIS

**A. Motion to Dismiss**

Etailinsights argues that the Lanham Act claim must be dismissed because the fraud allegations contained in paragraphs 21 and 22 fail to satisfy the heightened pleading standard of Rule 9(b). As an initial matter, the parties dispute whether Rule 9(b) applies to claims of false advertising under the Lanham Act. A majority of judges in this circuit who have considered the question have concluded that Rule 9(b) does generally apply to such claims. *See Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 709 (N.D. Ill. 2006) (citing

*MPC Containment Sys., Ltd. v. Moreland*, No. 05 C 6973, 2006 WL 2331148, at *2 (N.D. Ill. Aug. 10, 2006) (collecting cases)). This court has previously followed that approach. *See Midwest Canvas Corp. v. Commonwealth Canvas, Inc.*, No. 07 C 0085, 2008 WL 162757, at *5 (N.D. Ill. Jan. 16, 2008).

Internet Retailer directs the court to a recent decision criticizing these decisions: *Priority International Animal Concepts, Inc. v. Bryk*, No. 12-C-0150, 2012 WL 6020044 (E.D. Wis. Dec. 3, 2012). There, the plaintiff company alleged that its former employees entered into a scheme to form a partnership that would compete with the plaintiff using the plaintiff's proprietary information. *Id.* at *1. When the employees left the company and began advertising that their product could be used in conjunction with the plaintiff's product, the plaintiff filed a lawsuit alleging false advertising. *Id.* at *2. The complaint included general allegations that the defendants "made representations that were false and/or misleading and with clear intent to deceive the public and injure [the plaintiff]." *Id.* at *3. Notwithstanding these allegations, the court held that the complaint did not "sound in fraud" and so Rule 9(b) did not apply. *Id.* at *4. The court arrived at this conclusion because the fraud allegations were "not essential to [the] false advertising . . . claim[]" because "[e]ven in the absence of the . . . allegations, the claims would survive." *Id.* at *3.

The *Bryk* decision is difficult to reconcile with *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502 (7th Cir. 2007). There, the Seventh Circuit held that because "Rule 9(b) applies to 'averments of fraud,' not claims of fraud, . . . whether the rule applies will depend on the plaintiffs' factual allegations." *Id.* at 507. Although the fraud allegations were not essential to the claims at issue in the case, the court held that the claims nevertheless "sound[ed] in fraud" because they were "premised upon a course of fraudulent conduct." *Id.* As the court explained,

5

"[t]he first paragraph of the complaint begins: 'This action arises out of a pattern of fraud and racketeering activity,' and the complaint goes on to accuse Goldman Sachs of being 'a conspirator with Putnam in defrauding Plaintiff into abandoning his interest in CTA, and thus his rights to one-third of Archipelago.'" *Id.*

Here, as in *Borsellino*, Internet Retailer's false advertising claim sounds in fraud because it is premised upon a course of fraudulent conduct. The first paragraph of the complaint alleges that Etailinsights "is boasting that its infringing products contain[] data and customer contact information that Etailinsights collected through its own research, when much of that data and contact information was obtained through the unauthorized use of such data and contact information after it had been collected and maintained by Internet Retailer." (Compl. 1.) The second paragraph alleges that Etailinsights "is making false and misleading statements about the origin of its knockoff Database and the frequency with which Etailinsights updates the information contained therein." (Compl. 2.) To support its claim for false advertising, Internet Retailer alleges that Etailinsights's actions were "malicious, fraudulent, deliberate, and willful." (Compl. ¶ 42.) Thus, even if the *Bryk* court is correct that Rule 9(b)'s heightened pleading standard does not apply categorically to false-advertising claims under the Lanham Act, Internet Retailer's claim is "premised upon a course of fraudulent conduct." Accordingly, under *Borsellino*, it is subject to Rule 9(b)'s heightened pleading standard.

Having determined that a heightened pleading standard applies to Internet Retailer's allegations of false advertising, the court turns to whether Internet Retailer's complaint satisfies that standard. Etailinsights challenges the complaint's fraud allegations because they are based on Internet Retailer's "information and belief," which Etailinsights contends is insufficient to support a claim of fraud.

Although the Seventh Circuit frowns on making allegations on "information and belief" in the fraud context, there is no *per se* rule that such allegations are insufficient to satisfy the heightened pleading standard of Rule 9(b). *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013). Rather, a plaintiff may plead the circumstances constituting fraud on "information and belief" if (i) "'the facts constituting the fraud are not accessible to the plaintiff,'" and (ii) "'the plaintiff provides the grounds for his suspicions.'" *Id.* (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011)).

Here, Etailinsights challenges two of Internet Retailer's fraud allegations. First, it challenges the allegation that "[o]n information and belief, many of the privately held retailers listed in the Database have not disclosed their web sales numbers to Etailinsights despite its false and misleading representation that 'our company records are refreshed and phone verified by our research team every 90 days to ensure that our data is accurate and timely.'" (Compl. ¶ 21.) Second, it challenges the allegation that "[o]n information and belief, although Etailinsights claimed on February 12, 2014, that 2013 data related to web sales numbers was available to subscribers to its monthly membership, no 2013 data was available to subscribers." (Compl. ¶ 22.)

With respect to the first allegation, the court finds that it is properly pleaded on information and belief. The complaint alleges that several online retailers have informed Internet Retailer that they never disclosed their web sales data to Etailinsights. Based on this information, Internet Retailer has concluded that Etailinsights's representation that it verifies its records by phone is false, as "it is impossible for Etailinsights to have 'phone verified' its[] company records with online retailers who have never spoken to Etailinsights." (Pl.'s Opp. Br.

3, ECF No. 24.) Internet Retailer may make such an allegation "on information and belief" because it does not know firsthand that the representation is false, as it does not have access to Etailinsights's phone records. Instead, it relies on the secondhand information from online retailers to deduce that the representation is false. Because this secondhand information "provides the grounds for [Internet Retailer's] suspicions," it is properly pleaded on information and belief.

The first allegation also satisfies Rule 9(b)'s heightened pleading standard because it states with particularity the circumstances constituting Etailinsights's fraud. It states the "who" (Etailinsights), the "what" (the representation that its company records are refreshed and phone-verified by a research team every 90 days), the "when" (it continues to make the claim), the "where" (on its website), and the "how" (through advertisements on its website). This level of detail is sufficient at the pleading stage.

The second allegation is more problematic. Internet Retailer provides no "grounds for its suspicion" that Etailinsights falsely represented that "2013 data related to web sales numbers was available to subscribers to its monthly membership." (Compl. ¶ 22.) Internet Retailer argues that this allegation is proper because it "provid[es] particulars, including the date the representation was made, through reference to Etailinsights'[s] own website." (Pl.'s Opp. Br. 3.) But this argument goes only to Rule 9(b)'s particularity requirement; it does not address the additional requirement that, when alleging fraud on information on belief, a plaintiff must provide the grounds for the suspicion. Nothing in the complaint explains why Internet Retailer believes that 2013 data related to web-sales numbers were unavailable to Etailinsights's subscribers.

Moreover, the second allegation is deficient because it provides no detail about "where" or "how" the representation was made. Internet Retailer claims in its response brief that Etailinsights made the representation on its website through advertisements, but the complaint omits these details. Internet Retailer attached a copy of the website to the complaint, but the allegedly fraudulent misrepresentation of paragraph 22 is nowhere to be found in that document. The fact that Internet Retailer alleges the representation was made on a particular date—February 12, 2014—suggests that it did not appear on the website, and the complaint fails to explain where or how it was made. Under Rule 9(b), such allegations are necessary to support a claim of fraud.

Accordingly, the motion to dismiss is granted insofar as Internet Retailer's Lanham Act claim rests on the allegation that Etailinsights misrepresented that its 2013 data was available to subscribers. The dismissal is without prejudice; Internet Retailer may amend its complaint if it can cure the deficiencies identified above. The motion is otherwise denied.

## B. Motion for a More Definite Statement

Additionally, Etailinsights requests that the court order Internet Retailer to provide a more definite statement of several of its allegations. Specifically, Etailinsights argues that Internet Retailer should provide more detailed allegations regarding (i) "why it alleges that the contested statements in [p]aragraphs 21 and 22 are 'false and misleading'"; (ii) with respect to paragraph 22, the "place of the misrepresentation, the content of the misrepresentation, and the method by which the misrepresentation was communicated"; (iii) "[E]tailinsights's supposed copying of 'information,' and how the copying of that information was 'improper'"; (iv) "any legal and/or contractual obligations that make it allegedly 'improper' for [E]tailinsights to copy . . . information"; and (v) "Internet Retailer's 'conversion' claim, in which Internet Retailer

alleges that '[E]tailinsights has willfully and without justification converted Internet Retailer's Guide for its own use.'" (Def.'s Br. 9-12, ECF No. 21-1.)

As noted above, "[m]otions under Rule 12(e) are disfavored generally, and courts should grant [them] only if the complaint is so unintelligible that the defendant cannot draft [a] responsive pleading." *Rivera*, 974 F.Supp. 2d at 1195. Here, with respect to items (i) and (ii), Etailinsights's motion is moot, as the court has found that the allegation in paragraph 21 is pleaded with particularity and has dismissed the Lanham Act claim insofar as it relies on the allegation in paragraph 22.

With respect to item (iii), Etailinsights argues that Internet Retailer fails to allege what "information" Etailinsights allegedly copied. Paragraph 20 alleges that Etailinsights improperly copied "information contained in the Guide," and paragraph 7 alleges the information that the Guide contained. The allegation is sufficiently intelligible that Etailinsights can respond.

The remainder of the motion simply challenges the merits of Internet Retailer's claims. Etailinsights requests that Internet Retailer provide more details as to why it would be "improper" if Etailinsights copied information in light of the fact that the information includes "unprotected facts over which Internet Retailer would not have protectable rights." (Def.'s Br. 11.) Similarly, Etailinsights requests a more definite statement of Internet Retailer's conversion claim, contending that "by Internet Retailer's own admission, . . . [E]tailinsights *purchased* the Guide, which makes it unclear how Internet Retailer believes that [E]tailinsights improperly assumed ownership over the Guide." (*Id.* at 12.) The factual allegations related to these claims are sufficiently clear that Etailinsights can respond to them. Internet Retailer need not flesh out its legal theories for Etailinsights at this stage of the case. The motion is denied.

## IV. CONCLUSION

For the reasons stated above, Etailinsights's motion is granted in part and denied in part. The Lanham Act claim is dismissed without prejudice insofar as it is based on the allegation that Etailinsights falsely represented that 2013 data related to web sales was available to its subscribers. Internet Retailer may amend its complaint to cure the deficiencies outlined in this opinion. Etailinsights's motion is otherwise denied. The parties are to appear for a status hearing on July 9, 2014.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: June 24, 2014