**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Vertical Web Media, L.L.C., a/k/a | ) | Case No. 1:14−cv−03220 |
| Internet Retailer, | ) | |
| | ) | Judge Joan B. Gottschall |
| Plaintiff, | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| v. | ) | |
| | ) | |
| Etailinsights, Inc. | ) | |
| | ) | |
| Defendant. | ) | |

### ANSWER TO AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND JURY DEMAND OF DEFENDANT ETAILINSIGHTS, INC.

Defendant, Etailinsights, Inc. ("etailinsights'), by and through its undersigned counsel of record, hereby files its Answer to Plaintiff's Amended Complaint ("Amended Complaint"). Unless expressly admitted herein, etailinsights denies the material allegations of the Amended Complaint and demands strict proof thereof.

### RESPONSE TO UNNUMBERED INTRODUCTORY SECTION WITH HEADING "NATURE OF THE CASE"

Etailinsights responds to the unnumbered introductory section of the Amended Complaint labeled "Nature of the Case" as follows:

### NATURE OF THE CASE

This case concerns Etailinsights' copying and theft of Internet Retailer's valuable and proprietary information for illicit inclusion in Etailinsights' Database product. Etailinsights' infringing product contains proprietary information that Etailinsights obtained through improper means and which Etailinsights has copied and used without Internet Retailer's authorization or permission. To make matters worse, Etailinsights is boasting that its infringing products contains data and customer contact information that

Etailinsights collected through its own research, when much of that data and contact information was obtained through the unauthorized use of such data and contact information after it had been collected and maintained by Internet Retailer. Moreover, Etailinsights not only copied Internet Retailer's data and used portions of its contact list without authorization, but sold this very information to attendees at Internet Retailer-branded conferences in blatant violation of the published rules governing such events.

Worse still, Etailinsights is making false and misleading statements about the origin of its knockoff Database and the frequency with which Etailinsights updates the information contained therein. The misuse of Internet Retailer's intellectual property and Etailinsights' false statements have caused potential customers of Internet Retailer to choose Etailinsights' Database over Internet Retailer's products and publications.

It is striking that Etailinsights is using two of Internet Retailer's most valuable assets, its data and its customer contact list, in combination to compete with Internet Retailer. Although Internet Retailer has devoted years of work to the development of these assets, it has chosen not to sell its data and customer contacts to third-parties for purely marketing purposes, including not integrating Internet Retailer's information into customer relationship management software, such as Salesforce.com, as Etailinsights is now doing. Internet Retailer has consciously chosen not to sell its customer contact information in this manner in order to preserve the trust of the online retailers that provide Internet Retailer with information.

Etailinsights' selling of information that private online retailers provided only to Internet Retailer has damaged Internet Retailer's relationships with these companies.

Internet Retailer brings this lawsuit to stop Etailinsights free ride on Internet Retailer's back and to recover for the injury Etailinsights has caused.

**ANSWER: With regard to the unnumbered introductory section of the Amended Complaint labeled "Nature of the Case," etailinsights admits that Plaintiff's Amended Complaint purports to allege claims for unlawful infringement and use of certain Internet Retailer data and information, but etailinsights denies any unlawful use or infringement. Etailinsights is without knowledge or information sufficient to admit or deny the allegations about what are Internet Retailer's most valuable assets, the amount of time it has taken Internet Retailer to compile any specific data, whether Internet Retailer has chosen to sell data and customer contacts to third parties for purely marketing purposes or to integrate information into relationship management software, or the state of any of Internet Retailer's customer relationships and, therefore, etailinsights denies those allegations. Except as expressly admitted herein, etailinsights denies the allegations in the unnumbered introductory section of the Amended Complaint labeled "Nature of the Case."**

<u>**RESPONSE TO NUMBERED ALLEGATIONS OF THE AMENDED COMPLAINT**</u>

Etailinsights responds to the numbered allegations of the Amended Complaint as follows:

<u>**PARTIES**</u>

1. Plaintiff, Vertical Web Media L. L. C. a/k/a Internet Retailer, is a Delaware limited liability company, with its principal place of business located at 125 S. Wacker Drive, Suite 2900, Chicago, Illinois ("Internet Retailer" or "Plaintiff").

**ANSWER:** **Etailinsights does not possess sufficient information or knowledge to admit or deny the allegations in Paragraph 1 and therefore the same are denied.**

2.      Defendant, Etailinsights, Inc., is a North Carolina corporation, with its principal place of business in Cary, North Carolina ("Etailinsights" or "Defendant").

**ANSWER:  Admitted.**

<u>**JURISDICTION**</u>

3.      This Court has original jurisdiction over Count I pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States; Count I arises under 15 U.S.C. § 1125(a) an Act of Congress relating to trademarks, and an actual controversy exists within the Court's jurisdiction for which a declaration of rights is sought.

**ANSWER:   The allegations in Paragraph 3 constitute a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied, except that etailinsights admits that Count I is a claim asserted under 15 U.S.C. § 1125(a) and that this Court has jurisdiction over claims brought under the laws of the United States.**

4.      This Court has supplemental jurisdiction over Counts II –VI pursuant to 28 U.S.C. § 1367(a) because they are so related to claims in the action within the Court's original jurisdiction such that they form part of the same case or controversy under Article III of the United States Constitution.

**ANSWER:   The allegations in Paragraph 4 constitute a legal conclusion to which no response is required. To the extent a response is required, the allegations are denied.**

5.     This Court has personal jurisdiction over Etailinsights because it has directed the effects of its tortious acts within the Northern District of Illinois. Illinois' long-arm statute authorizes specific jurisdiction based on the commission of a tortious act within Illinois. 735 ILCS 5/2-209. Etailinsights sells the product that forms the basis of Internet Retailer's action, the eCommerce Prospect Database Solution ("the Database"), across the country, including Illinois, through an interactive website, located at www.etailinsights.com. In addition, Etailinsights has solicited and sold infringing products to companies located within Illinois. Etailinsights has attended and marketed the Database at Internet Retailer-branded conferences in Chicago, Illinois. It is these actions that form the basis of Internet Retailer's claims against Etailinsights.

**ANSWER:   The allegations in the first two sentences of Paragraph 5 constitute legal conclusions to which no response is required.   To the extent a response is required to those allegations, they are denied.   Etailinsights admits that it sells subscriptions to its database, that its website is www.etailinsights.com, and that it has made sales to companies located within Illinois. Etailinsights also admits that one or more of its employees have attended Internet Retailer conferences in Chicago. Except as expressly admitted herein, the allegations in Paragraph 5 are denied.**

## FACTS COMMON TO ALL CLAIMS

6.     Internet Retailer is a privately held company based in Chicago that focuses on providing business intelligence for the e-commerce market. Internet Retailer publishes a monthly magazine, two web sites, two e-mail newsletters, eleven research guides, an online database directed to various aspects of the e-commerce business, and has built and

maintains a significant business relationship with three Internet Retailer-branded conferences. Internet Retailer is a journalistically driven enterprise, which aims to be the most credible provider of objective business information on the market trends, technology, competitive practices, and people that shape the e-commerce industry. Internet Retailer is able to gather the detailed information from online retailers because these retailers trust that Internet Retailer will not sell their contact information and data to third-parties for unfettered and unwanted solicitations.

**ANSWER:** **Etailinsights does not possess sufficient information or knowledge to admit or deny the allegations in Paragraph 6 and therefore the same are denied.**

7.     One of Internet Retailer's most popular products is its Top 500 Guide ("the Guide"), which it sells in three formats—print edition, digital edition and online interactive database. The Guide ranks the largest publicly and privately held online retailers in North America. The ranking of online retailers cannot be found in any other publically available record for most online retailers. The Guide includes 262 data points about each retailer including financial information, such as online sales and average tickets; operating data, such as web traffic and unique monthly visitors; marketing information, such as e-mail marketing campaign strategies and social networking affiliations; and information on the e-commerce vendors used by each online retailer. Internet Retailer aggressively markets the Guide as the "Bible of the E- Commerce Industry," and the product is the foundation of the company's growth strategy.

**ANSWER:** **To the extent that Paragraph 7 refers to or describes the contents of a written document, that document speaks for itself and is the best**

evidence of its contents. Insofar as the allegations of Paragraph 7 are inconsistent with those contents, etailinsights denies the same. Otherwise, etailinsights does not possess sufficient information or knowledge to admit or deny the remaining allegations in Paragraph 7 and therefore the same are denied.

8. Internet Retailer has carefully cultivated its relationships with online retailers and their executives for over fifteen years. The information that it has received as a result of these relationships is included in the Guide. In addition, as a result of Internet Retailer's investment and hard work over the years, Internet Retailer has developed a valuable contact list which includes online retailers' executives' confidential contact information ("Contact List").

**ANSWER: Etailinsights does not possess sufficient information or knowledge to admit or deny the allegations in Paragraph 8 and therefore the same are denied.**

9. Privately held online retailers typically do not publish their online sales data or their executives' confidential contact information, but will provide their information to Internet Retailer because Internet Retailer uses their web sales numbers to measure the growth of the entire e-commerce industry and limits its use of the data to journalistically driven enterprises. Many online retailers refuse to disclose their web sales and contact information to companies, whose primary aim is to sell the information or otherwise use it for purely commercial purposes, including direct e-mail marketing and integration with Salesforce.com.

**ANSWER: Etailinsights does not possess sufficient information or knowledge to admit or deny the allegations in Paragraph 9 and therefore the same are denied.**

10.     Since 2009, a member of Etailinsights management team has purchased various Internet Retailer research products using a fake retailer website address. A copy of these record is attached hereto as Exhibit A.

**ANSWER:   To the extent that Paragraph 10 refers to or describes the contents of a written document, that document speaks for itself and is the best evidence of its contents.  Insofar as the allegations of Paragraph 10 are inconsistent with those contents, etailinsights denies the same. Except as expressly admitted herein, the allegations in Paragraph 10 are denied.**

11.     Internet Retailer clearly informs subscribers of the terms and conditions governing the use of its data on Internet Retailer's Top 500 website (top500guide.com). Specific details applicable to the ownership and use of Internet Retailer's content can be found at http://www.top500guide.com/service/terms/ and are attached hereto as Exhibit B. In addition, Each Internet Retailer product contains the following language: "no part of this magazine may be reproduced in any form."

**ANSWER:   To the extent that Paragraph 11 refers to or describes the contents of a written document, that document speaks for itself and is the best evidence of its contents.  Insofar as the allegations of Paragraph 11 are inconsistent with those contents, etailinsights denies the same.  Except as expressly admitted herein, the allegations in Paragraph 11 are denied.**

12.     On information and belief, Etailinsights has purchased other Internet Retailer research products, including Internet Retailer's most current publications, and has updated Etailinsights knockoff Database using Internet Retailer's Top 500 Guide for years 2012 and 2013.

**ANSWER:  Etailinsights admits that it has purchased publications from Internet Retailer.  Except as expressly admitted herein, the allegations in Paragraph 12 are denied.**

13.     On information and belief, Etailinsights used the research products it purchased from Internet Retailer starting in 2009, including the Guide, to create a portion the Database, and Etailinsights continues to use the proprietary Contact List and data it obtained and used without authorization from Internet Retailer as a base on which to add contacts to its Database.

**ANSWER:  Denied.**

14.     On information and belief, many privately held online retailers did not disclose their contact information to Etailinsights or give Etailinsights permission to publish their information in the Database. Instead, Etailinsights obtained the information when its executives had access to Internet Retailer's Contact List during their employment at Bronto, Internet Retailer's e-mail list processor. Etailinsights uses the Contact List to search press releases, social media, LinkedIn, and other professional social media websites for updates about the retailers in the Database.

**ANSWER:  Etailinsights admits that some online retailers did not disclose or provide permission to use their contact information directly to Etailinsights.  Except as expressly admitted herein, the allegations in Paragraph 14 are denied.**

15.     On information and belief, Etailinsights also sells the names and contact information (including e-mail address) of the online retail executives contained in the Contact List to vendors who use the information for marketing purposes, despite the fact that these executives have neither consented to the sale of their information nor agreed to

receive unsolicited communications from these vendors with whom they have no previous contact.

**ANSWER:  Denied.**

16.     Internet Retailer has not authorized Etailinsights to copy or use the information contained in the Guide or Contact List for publication.

**ANSWER:  The allegations in Paragraph 16 constitute a legal conclusion to which no response is required. To the extent a response is required, denied.**

17.     In or around January 2011, Etailinsights, a competitor of Internet Retailer in the information service field, was founded.

**ANSWER:  Etailinsights admits that it was founded in 2011.  Except as expressly admitted herein, the allegations in Paragraph 17 are denied.**

18.     On information and belief, Etailinsights sells the Database, which includes information nearly identical to that contained in the Guide, to subscribers which it solicits through interstate commercial advertising and promotion. The Database also includes the online retailers' executives confidential contact information taken from Internet Retailer's Contact List. Etailinsights' Database directly competes with Internet Retailer's Guide and other products and publications.

**ANSWER:  Denied.**

19.     The Guide's web sales numbers for many of the private companies are provided to Internet Retailer directly by the company. If a company does not provide sales figures to Internet Retailer, Internet Retailer estimates the company's sales based on a proprietary formula it has developed over the last eleven years. The web sales of nearly every online retailer listed in the Database are the exact numbers in the Guide, except

some numbers in the Database are rounded to the nearest million.

**ANSWER: Etailinsights is without knowledge or information sufficient to admit or deny the allegations in Paragraph 19 regarding how Internet Retailer obtains and develops sales data and, therefore, etailinsights denies those allegations. To the extent that Paragraph 19 refers to or describes the contents of written documents, those documents speaks for themselves and are the best evidence of their contents. Insofar as the allegations of Paragraph 19 are inconsistent with those contents, etailinsights denies the same. Except as expressly admitted herein, the allegations in Paragraph 19 are denied.**

20. On information and belief, Etailinsights has improperly copied the information contained in the Guide.

**ANSWER: Denied.**

21. On information and belief, many of the privately held retailers listed in the Database have not disclosed their web sales numbers to Etailinsights despite its false and misleading representation that "our company records are refreshed and phone verified by our research team every 90 days to ensure that our data is accurate and timely." Etailinsights' aforementioned claim is unsubstantiated and thus literally false. A copy of Etailinsights' website is attached hereto as Exhibit C.

**ANSWER: To the extent that Paragraph 21 refers to or describes the contents of a written document, that document speaks for itself and is the best evidence of its contents. Insofar as the allegations of Paragraph 21 are inconsistent with those contents, etailinsights denies the same. Except as expressly admitted herein, the allegations in Paragraph 21 are denied.**

22.     On February 12, 2014, Etailinsights represented, on its website, that "our company records are refreshed and phone verified by our research team every 90 days to ensure that our data is accurate and timely." See Exhibit C. On February 17 and 18, 2014, Internet Retailer accessed Etailinsights' website and discovered that, for the retailers Internet Retailer was able to search, the 2013 web sales data was not available to Etailinsights' subscribers. On February 17 and 18, 2014, the only online sales data provided to Etailinsights' subscribers was the 2012 data. See Group Exhibit D. For example, for Crate & Barrel, Bluestem Brands, Inc., and PCPD, LLC, no 2013 online sales data was provided. See Group Exhibit D. Etailinsights' aforementioned claim on February 12, 2014 is literally false.

**ANSWER:   To the extent that Paragraph 22 refers to or describes the contents of written documents, those documents speak for themselves and are the best evidence of their contents.   Insofar as the allegations of Paragraph 22 are inconsistent with those contents, etailinsights denies the same.   Etailinsights is presently without sufficient knowledge or information to admit or deny the allegations in Paragraph 22 regarding Internet Retailer's access or discoveries and, therefore, etailinsights denies those allegations.   Except as expressly admitted herein, the allegations in Paragraph 22 are denied.**

23.     Despite Etailinsights' claim that it phone verifies the data "every 90 days," the information actually provided by Etailinsights to its subscribers for the companies that Internet Retailer was able to access is outdated by more than a year. Thus, Etailinsights' aforementioned claim is literally false.

**ANSWER: To the extent that Paragraph 23 refers to or describes the**

contents of a written document, that document speaks for itself and is the best evidence of its contents. Insofar as the allegations of Paragraph 23 are inconsistent with those contents, etailinsights denies the same. Except as expressly admitted herein, the allegations in Paragraph 23 are denied.

24. On or around March 11, 2014, several privately held online retailers featured in the Guide informed Internet Retailer that despite the fact Etailinsights publishes its web sales, the privately held online retailers had never heard of Etailinsights and had only disclosed their web sales data to Internet Retailer.

**ANSWER: Etailinsights does not possess sufficient information or knowledge to admit or deny the allegations in Paragraph 24 and therefore the same are denied.**

25. The web sales numbers Etailinsights is currently publishing in the Database could only come from Internet Retailer's Guide, as several privately held online retailers have confirmed they never disclose their web sales data to any organization other than Internet Retailer.

**ANSWER: Denied.**

26. Etailinsights' aforementioned advertisement is false and misleading.

**ANSWER: Denied.**

27. Etailinsights' false and misleading descriptions and representations of fact are material and have driven customers and potential customers away from Internet Retailer and to Etailinsights.

**ANSWER: Denied.**

28. For the past four years, Internet Retailer has exclusively used Bronto

Software, Inc., a Delaware corporation with its principal place of business in Durham, North Carolina as its e-mail provider ("Bronto").

**ANSWER: Etailinsights does not possess sufficient information or knowledge to admit or deny the allegations in Paragraph 28 and therefore the same are denied.**

29. Internet Retailer has contracted with Bronto to send Internet Retailer's own editorial and marketing e-mails to Internet Retailer' s customers and contacts, including executives of companies profiled in the Guide. The information that Internet Retailer provided to Bronto included demographic data on the executives, including their company name, title, email, and function within their respective companies. Internet Retailer and Bronto have a valid contract, and the agreement between Bronto and Internet Retailer includes a confidentially provision. The confidentiality provision states that Bronto agrees to: (1) take reasonable precautions to protect confidential information; (2) not use confidential information except as permitted by the agreement; and (3) not divulge confidential information to a third-party.

**ANSWER: Etailinsights does not possess sufficient information or knowledge to admit or deny the allegations in Paragraph 29 and therefore the same are denied.**

30. Because Bronto is Internet Retailer's e-mail provider, Internet Retailer continuously provided all of its contacts to Bronto pursuant to the contract. The Contact List includes Internet Retailer's confidential list of online retailers' executives' contact information such as their title, e-mail extension, and phone number, which Internet Retailer has developed for over fifteen years. Internet Retailer never sells its customer

contact lists to vendors or other third-parties and does not distribute Internet Retailer e-mail messages to recipients other than to those customers who have opted to accept them.

**ANSWER: Etailinsights does not possess sufficient information or knowledge to admit or deny the allegations in Paragraph 30 and therefore the same are denied.**

31. Before creating Etailinsights, Etailinsights' Chief Executive Officer, Chief Technology Officer, Senior Technical Consultant, and Executive Vice President of Marketing were key Bronto employees ("Former Bronto Employees").

**ANSWER: It is admitted that Etailinsights' Chief Executive Officer, Chief Technology Officer, Senior Technical Consultant, and executive Vice President of Marketing are former Bronto employees. Except as expressly admitted herein, the allegations in Paragraph 31 are denied.**

32. Based on information and belief, before the Former Bronto Employees resigned from Bronto, one or a combination of the group, downloaded, copied, or otherwise obtained for their own use Internet Retailer's Contact List from Bronto without authorization from Internet Retailer.

**ANSWER: Denied.**

33. As part of its Database, Etailinsights is selling Internet Retailer's data as a key component of its "premium sales solution" with "Salesforce.com integration," and these actions are damaging Internet Retailer's business relationships. Online retailers trust that Internet Retailer will not sell or disclose their information to any unauthorized parties. Based on information and belief, Etailinsights does not have independent access to the data that Etailinsights is selling and has improperly obtained.

**ANSWER:** Etailinsights does not possess sufficient information or knowledge to admit or deny the allegations in Paragraph 33 about what online retailers trust Internet Retailer to sell or disclose and therefore the same are denied. Except as expressly admitted herein, the allegations in Paragraph 33 are denied.

34.     Etailinsights has offered to sell and has sold to companies both in Illinois and elsewhere, including Internet Retailer's customers, the Database which includes information taken from the Guide and Contact List.

**ANSWER: Denied.**

35.     On or around February 10, 2014, an Etailinsights' Regional Sales Manager, attended an Internet Retailer-branded trade show in Orlando, Florida, for which Internet Retailer is the official media sponsor and content provider. As part of her exhibit hall trade show access pass, the Regional Sales Manager agreed to the Terms and Conditions contained in the exhibition pass agreement. Such Terms and Conditions "prohibit non-exhibitor vendors from soliciting sales or sales leads on the trade show floor, in the aisles, or in the lobbies, event hotels, or at any event functions." Despite the prohibition, Etailinsights' Regional Sales Manager has disregarded the prohibition and marketed the Database to the trade show's exhibitors, and continues to follow up regularly with the exhibitors she approached at the show.

**ANSWER: Etailinsights admits that its Regional Sales Manager attended an Internet Retailer trade show in Orlando, Florida on or around February 10, 2014. To the extent that Paragraph 35 refers to or describes the contents of a written document, that document speaks for itself and is the best evidence of its contents. Insofar as the allegations of Paragraph 35 are inconsistent with those contents,**

**etailinsights denies the same. Except as expressly admitted herein, the allegations in Paragraph 35 are denied.**

36.　　If Etailinsights continues to publish the Database, several privately held online retailers are likely to stop sharing their data with Internet Retailer, which will harm Internet Retailer's business and its reputation.

**ANSWER: Denied.**

37.　　Etailinsights' actions have wrongfully diverted sales away from Internet Retailer and to Etailinsights, causing injury to Internet Retailer. Moreover, the unsolicited communications that Internet Retailer's customers and contacts are receiving from third-party vendors is detrimentally affecting Internet Retailer's relationships with its customers and contacts.

**ANSWER: Denied.**

## FIRST CLAIM FOR RELIEF

38.　　Internet Retailer repeats and realleges each and every preceding paragraph as though fully set forth herein.

**ANSWER: Etailinsights' responses to the allegations in the paragraphs of the Amended Complaint preceding Paragraph 38, set out above, are hereby adopted and incorporated by reference as if fully set forth herein. Except as expressly admitted herein, the allegations in Paragraph 38 are denied.**

39.　　Etailinsights' false and misleading descriptions and representations of fact in its advertising and promotion concerning the nature, characteristics, and qualities of the Database violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). As described above, among Etailinsights false and misleading misrepresentations of material fact are

that its' records are refreshed and phone verified by its research team every 90 days to ensure its data is accurate and timely and that Etailinsights is the leading provider of rich, accurate, and quarterly-refreshed data on specific online retailers, in interstate commercial advertising and promotion, which materially misrepresents the quality of its product.

**ANSWER: Denied.**

40.     Etailinsights' false and misleading descriptions and representations that specific data related to web sales numbers is available to subscribers materially misrepresents the quality of Etailinsights product. In fact such data is not available.

**ANSWER: Denied.**

41.     Etailinsights' continued false and misleading descriptions and representations of fact have deceived and are likely to deceive purchasers and consumers into purchasing the Database instead of the Guide and unfairly and unlawfully shifting from Internet Retailer to Etailinsights customers, income and profit that should go to Internet Retailer. Internet Retailer has been injured by Etailinsights' false and misleading advertising.

**ANSWER: Denied.**

42.     Internet Retailer has been and will likely continue to be damaged by Etailinsights' false and misleading representations in an amount to be determined by a jury at trial.

**ANSWER: Denied.**

43.     On information and belief, Etailinsights' actions are malicious, fraudulent, deliberate, and willful.

**ANSWER: Denied.**

44.     Etailinsights acts have caused Internet Retailer, and unless enjoined will continue to cause Internet Retailer, irreparable harm. Internet Retailer has no adequate remedy at law.

**ANSWER: Denied.**

<u>**SECOND CLAIM FOR RELIEF**</u>

45.     Internet Retailer reasserts and incorporates by reference the allegations of each and every preceding paragraph as if fully set forth herein.

**ANSWER: Etailinsights' responses to the allegations in the paragraphs of the Amended Complaint preceding Paragraph 45, set out above, are hereby adopted and incorporated by reference as if fully set forth herein. Except as expressly admitted herein, the allegations in Paragraph 45 are denied.**

46.     Internet Retailer's confidential and proprietary information relating to its privately held online retailer Contact List is a trade secret within the meaning of 765 ILCS § 1065/2.

**ANSWER: The allegations in Paragraph 46 constitute a legal conclusion to which no response is required. To the extent a response is required, denied.**

47.     The Contact List has independent economic value as it enables Internet Retailer to create, market, and sell services directly to its customers and contacts.

**ANSWER: Etailinsights does not possess sufficient information or knowledge to admit or deny the allegations in Paragraph 47 and therefore the same are denied.**

48. Internet Retailer devoted a substantial amount of time, effort, and expense to develop the confidential and proprietary Contact List.

**ANSWER: Etailinsights does not possess sufficient information or knowledge to admit or deny the allegations in Paragraph 48 and therefore the same are denied.**

49. The above-described confidential and proprietary Contact List and data is not readily available from any public source.

**ANSWER: Etailinsights does not possess sufficient information or knowledge to admit or deny the allegations in Paragraph 49 and therefore the same are denied.**

50. Internet Retailer used reasonable efforts to maintain the secrecy and confidentially of its confidential and proprietary Contact List.

**ANSWER: Etailinsights does not possess sufficient information or knowledge to admit or deny the allegations in Paragraph 50 and therefore the same are denied.**

51. On information and belief, Etailinsights improperly acquired the confidential and proprietary Contact List through Former Bronto Employees employment, either individually or collectively, at Bronto, in violation of the confidentially agreement between Bronto and Internet Retailer.

**ANSWER: Denied.**

52. On information and belief, Etailinsights misappropriated Internet Retailer's Contact List to create a business model and product to unfairly compete with Internet Retailer's information services and reference products.

**ANSWER: Denied.**

53.     On information and belief, Etailinsights used and continues to use the confidential and proprietary Contact List to their competitive advantage unfairly and to the detriment of Internet Retailer.

**ANSWER: Denied.**

54.     Etailinsights' misappropriation is willful and malicious.

**ANSWER: Denied.**

### THIRD CLAIM FOR RELIEF

55.     Internet Retailer repeats and realleges each and every preceding paragraph as though fully set forth herein.

**ANSWER:  Etailinsights' responses to the allegations in the paragraphs of the Amended Complaint preceding Paragraph 55, set out above, are hereby adopted and incorporated by reference as if fully set forth herein.  Except as expressly admitted herein, the allegations in Paragraph 55 are denied.**

56.     Etailinsights' false and misleading representations of fact as described above represent deceptive trade practices in that Etailinsights falsely represents that the Database is a result of Etailinsights' research team and their relationships with online retailers. However, in fact it is an unoriginal copy of the Guide and Contact List.

**ANSWER: Denied.**

57.     The foregoing acts of Etailinsights constitute unfair trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 *et seq*.

**ANSWER: Denied.**

58.     Internet Retailer has been and will likely continue to be damaged by

Etailinsights' false and misleading representations in an amount to be determined by a jury at trial.

**ANSWER: Denied.**

59.     Etailinsights conduct is willful, intentional, deliberate, and in bad faith.

**ANSWER: Denied.**

60.     Etailinsights' acts have caused Internet Retailer, and unless enjoined will continue to cause Internet Retailer, irreparable harm. Internet Retailer has no adequate remedy at law.

**ANSWER: Denied.**

## FOURTH CLAIM FOR RELIEF

61.     Internet Retailer repeats and realleges each and every preceding paragraph as though fully set forth herein.

**ANSWER: Etailinsights' responses to the allegations in the paragraphs of the Amended Complaint preceding Paragraph 61, set out above, are hereby adopted and incorporated by reference as if fully set forth herein. Except as expressly admitted herein, the allegations in Paragraph 61 are denied.**

62.     Etailinsights has engaged in the foregoing unfair and deceptive acts and practices with the intent that others rely on, and with the effect that others have relied on, Etailinsights' false and misleading representations.

**ANSWER: Denied.**

63.     Etailinsights' false and misleading descriptions and representations have deceived and are likely to deceive purchasers and consumers into purchasing Etailinsights' Database instead of Internet Retailer's Guide and unfairly and unlawfully

shifting from Internet Retailer to Etailinsights income and profit that should go to Internet Retailer.

**ANSWER: Denied.**

64.     The foregoing acts constitute deceptive trade practices in violating of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2 *et seq*.

**ANSWER: Denied.**

65.     Internet Retailer has been and will likely continue to be damaged by Etailinsights' false and misleading representations in an amount to be determined by a jury at trial.

**ANSWER: Denied.**

66.     On information and belief, Etailinsights' conduct is willful, deliberate, intentional and in bad faith.

**ANSWER: Denied.**

67.     Etailinsights' acts have caused Internet Retailer, and unless enjoined will continue to cause Internet Retailer, irreparable harm. Internet Retailer has no adequate remedy at law.

**ANSWER: Denied.**

## FIFTH CLAIM FOR RELIEF

68.     Internet Retailer repeats and realleges each and every preceding paragraph as though fully set forth herein.

**ANSWER:  Etailinsights' responses to the allegations in the paragraphs of the Amended Complaint preceding Paragraph 68, set out above, are hereby adopted and incorporated by reference as if fully set forth herein.   Except as expressly**

**admitted herein, the allegations in Paragraph 68 are denied.**

69.     Etailinsights has improperly assumed ownership over Internet Retailer's Guide and has willfully and without justification converted Internet Retailer's Guide for its own use.

**ANSWER: Denied.**

70.     Internet Retailer alone has the right to its Guide, which took over eleven years to create and develop.

**ANSWER:     Etailinsights does not possess sufficient information or knowledge to admit or deny the allegations in Paragraph 70 concerning how long it took Internet Retailer to compile its Top 500 Guide and therefore the same are denied. Except as expressly admitted herein, the allegations in Paragraph 70 are denied.**

71.     Internet Retailer's Guide is invaluable because its use by Etailinsights enables Etailinsights to conduct its business in direct competition with Internet Retailer.

**ANSWER: Denied.**

72.     Internet Retailer has the sole right to possess the information that appearing in the Guide. Etailinsights wrongfully and without authorization copied portions of the Guide, and used the information as if it were Etailinsights' own information to create the Database, which it now markets in direct competition with Internet Retailer.

**ANSWER: Denied.**

73.     Because of Etailinsights' actions, Internet Retailer has been damaged in an amount to be proven at trial.

**ANSWER: Denied.**

## SIXTH CLAIM FOR RELIEF

74.     Internet Retailer repeats and realleges each and every preceding paragraph as though fully set forth herein.

**ANSWER:  Etailinsights' responses to the allegations in the paragraphs of the Amended Complaint preceding Paragraph 74, set out above, are hereby adopted and incorporated by reference as if fully set forth herein.  Except as expressly admitted herein, the allegations in Paragraph 74 are denied.**

75.     Etailinsights is a party to a contract with Internet Retailer which, as described above, prohibits Etailinsights from improperly copying the Guide.

**ANSWER:  To the extent that Paragraph 75 refers to or describes the contents of a written document, that document speaks for itself and is the best evidence of its contents.  Insofar as the allegations of Paragraph 75 are inconsistent with those contents, etailinsights denies the same.  Except as expressly admitted herein, the allegations in Paragraph 75 are denied.**

76.     Despite the fact that Internet Retailer has performed all of its contractual obligations under the Guide purchase agreement, Etailinsights has breached the contract.

**ANSWER:  Denied.**

77.     Etailinsights breached this contract for the reasons detailed herein, and, in particular, by copying the Guide to create a business model and product to compete with Internet Retailer.

**ANSWER:  Denied.**

78.     Internet Retailer has suffered damages as a result of Etailinsights' breach

of contract in an amount to be proved at trial.

**ANSWER: Denied.**

## RESPONSE TO UNNUMBERED *AD DAMNUM* CLAUSE
## WITH HEADING "PRAYER FOR RELIEF"

Etailinsights responds to the unnumbered *ad damnum* clause, following Paragraph 78 of the Amended Complaint, labeled "Prayer for Relief" as follows:

## PRAYER FOR RELIEF

WHEREFORE, Internet Retailer respectfully requests:

A.      Preliminary and then permanent injunctive relief in the form of prohibiting Etailinsights and their officers, business partners, equity holders, agents, subcontractors, servants, employees, subsidiaries and related companies or entities, and all others acting in concert or participating with them from:

      (i)      Selling, distributing, or advertising any part of the Database that was obtained from Internet Retailer.

      (ii)      Copying Internet Retailer's original works, including but not limited to the Guide, Second 500, China 500, Mobile 500, Social Media 500, Hot 100, Europe 500, Latin Top 400, and Asia 500.

B.      Ordering Etailinsights to return all copies of Internet Retailer's Contact List and Guide data in its possession or control and ordering Etailinsights to account for all profits obtained from their unjust enrichment and unlawful acts;

C.      Ordering Etailinsights to pay Internet Retailer punitive and compensatory damages;

D.      Entering judgment on all counts in favor of Internet Retailer and against Etailinsights, and ordering Etailinsights to pay all of Internet Retailer's attorneys' fees, expenses, and costs associated with this action.

E.      That this Court grant such other and further relief as this Court may deem just and equitable.

F.      Ordering Etailinsights to remove from Salesforce.com any and all Contact Lists and data it has obtained from Internet Retailer without authorization.

**ANSWER:  Etailinsights denies that Internet Retailer is entitled to any of the relief requested in the unnumbered *ad damnum* clause following Paragraph 78, including its subparts A through F, or to any other relief from etailinsights.**

## AFFIRMATIVE  AND  ADDITIONAL  DEFENSES

### First Defense

Some or all of Internet Retailer's claims are barred by the doctrine of laches to the extent that Internet Retailer had notice of any alleged conduct challenged by this lawsuit and unreasonably delayed bringing suit.

### Second Defense

Some or all of Internet Retailer's claims are barred by the doctrine of waiver, estoppel, and/or acquiescence to the extent that Internet Retailer's poorly defined terms and conditions and/or lack of enforcement of the same caused etailinsights or other third parties to believe that Internet Retailer consented to any challenged conduct, if any, and/or to the extent that Internet Retailer relinquished its right to challenge such conduct, if any, causing any such conduct to continue.

## Third Defense

Some or all of Internet Retailer's claims are barred by the doctrine of unclean hands to the extent Internet Retailer has engaged in false advertising related to its products and/or to the extent it has improperly acquired and used etailinsights' database information.

## Fourth Defense

In the event Internet Retailer establishes an agreement between the Parties, some or all of Internet Retailer's claims may be barred by the terms of any such agreement.

## Fifth Defense

Some or all of Internet Retailer's claims are barred by the applicable statutes of limitations to the extent that any of the challenged conduct, if any, occurred outside of the applicable limitations periods.

## Sixth Defense

Without any admission by etailinsights that Internet Retailer suffered injury in any way, to the extent that Internet Retailer did suffer any such injury, which is denied, Internet Retailer's claim(s) are barred in whole or in part to the extent it failed to use reasonable means to prevent the alleged damage and/or failed to use reasonable means to mitigate its damages.

## Seventh Defense

Without admitting any alleged use or infringement, Internet Retailer's claims are barred to the extent any allegedly unlawful or infringing use of data or contact information was licensed or otherwise authorized by persons or entities with the right to license or authorize such use.

**Eighth Defense**

Federal law preempts some or all of Internet Retailer's claims under state law. For example, Internet Retailer's state-law unfair competition and statutory claims are preempted by the Copyright Act to the extent that they are premised on any alleged improper acquisition and/or use of Internet Retailer's information or data within the subject matter of copyright.

**Ninth Defense**

State law preempts some or all of Internet Retailer's common law claims. For example, to the extent Internet Retailer's trade secret and conversion claims are premised on the same underlying facts, the conversion claim is preempted.

**Tenth Defense**

The Amended Complaint fails to state a claim upon which relief can be granted, including but not limited to because:

(a) the Amended Complaint fails to allege the necessary elements of conversion, including but not limited to failing to allege etailinsights' unauthorized and wrongful assumption of control, dominion, or ownership over Plaintiff's Top 500 Guide that etailinsights purchased, Internet Retailer's property right to the intangible, non-confidential, and non-copyright protected "information" contained in the Top 500 Guide, Internet Retailer's immediate right to possession of any information in the Top 500 Guide, and Internet Retailer's demand for possession of the Top 500 Guide;

(b) the Amended Complaint fails to allege the necessary elements of a valid contract between the parties, including but not limited to failing to allege

mutual assent to any contract(s), consideration for any contract(s), and definite and certain terms for any contract(s) that govern the use of Internet Retailer's publications;

(c) the alleged false statements Internet Retailer describes are true, not deceptive, not literally false, or immaterial;

(d) the alleged false statements Internet Retailer describes did not and are not likely to proximately cause Internet Retailer's alleged damages.

(e) the alleged false statements Internet Retailer describes are not actionable to the extent they are mere puffery.

(f) the alleged trade secret contact information is in the public domain or otherwise insufficiently secret.

**RESERVATION OF DEFENSES AND AFFIRMATIVE DEFENSES**

Etailinsights hereby gives notice that it intends to rely upon any other defenses and affirmative defenses that may become available or appear during the discovery proceedings in this case and hereby reserves its right to amend its Answer to assert any such affirmative defenses.

WHEREFORE, Defendant prays:

1. That Plaintiff take nothing by its Amended Complaint and for a judgment in favor of Defendant and against Plaintiff, dismissing the Amended Complaint;

2. That Defendant be awarded its costs of suit, including reasonable attorneys' fees; and

3. That this Court order such other and further relief in Defendant's favor as the Court may find just and proper.

## DEMAND FOR JURY TRIAL

Defendant etailinsights, Inc. demands a jury trial on all issues triable by jury.


Dated: July 16, 2014                Respectfully submitted:


/s/ J. Kellam Warren
J. Kellam Warren, NC Bar No. 26811
MAINSAIL LAWYERS
1340 Environ Way
Chapel Hill, NC 27517
Telephone: (919) 238-4088
Fax: (888) 501-9309
E-mail: kwarren@mainsaillawyers.com

Jill C. Anderson
Freeborn & Peters LLP
311 S. Wacker Drive, Ste. 3000
Chicago, Illinois 60606
Telephone: 312-360-6000
Fax: 312-360-6571

*Attorneys for Defendant etailinsights, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing ***Answer to Amended Complaint*** was filed electronically on July 16, 2014 using the CM/ECF System. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ J. Kellam Warren